| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO.  1:17-CR-70(1) |
| | § | |
| ANTHONY JACKSON, JR. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Anthony Jackson, Jr.'s ("Jackson") *pro se* Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (#292), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of Coronavirus Disease 2019 ("COVID-19").  The Government opposes the motion (#296).  After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion.  Having considered the motion, the Government's response, Probation's recommendation, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.      Background

Jackson's offense of conviction stems from his participation in a multi-state drug-trafficking conspiracy.  On May 3, 2017, a federal grand jury in the Eastern District of Texas returned a single-count Indictment charging Jackson with Conspiracy to Distribute and Possess With Intent to Distribute 5 Kilograms or More of Cocaine from on or about 2014 and continuing thereafter until May 3, 2017, in violation of 21 U.S.C. § 846.  On September 27, 2017, Jackson pleaded guilty pursuant to a non-binding plea agreement.  Subsequently, on March 28, 2018, the court sentenced Jackson to 151 months' imprisonment, to be followed by a 5-year term of supervised release.  On August 7, 2020, the court reduced Jackson's sentence from 151 months' to 101

months' imprisonment. Jackson is currently housed in the medium-security prison camp at Atlanta United States Penitentiary, located in Atlanta, Georgia ("Atlanta USP"). His projected release date is August 4, 2024.

II. Analysis

A. Exhaustion of Administrative Remedies

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's

motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Attached to Jackson's motion for compassionate release is a letter addressed to Warden Wood, dated April 10, 2020, requesting a sentence reduction pursuant to 18 U.S.C. § 3582. The Government, in its response, however, notes that neither the BOP nor Atlanta USP could find any record of Jackson's exhausting his administrative remedies, as confirmed by Probation. In any event, even if Jackson had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has

4

served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, ___ F.3d ___, No. 20-61192, 2021 WL 1732282, at *1 (5th Cir. Apr. 30, 2021); *United States v. Cooper*, ___ F.3d ___, No. 20-20485, 2021 WL 1661493, at *3 (5th Cir. Apr. 28, 2021).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 2021 WL 1661493, at *3; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *Cooper*, 2021 WL 1661493, at *3; *Shkambi*, 993 F.3d at 392.  Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

B.  Medical Condition

In the instant motion, Jackson, age 39, contends that he is eligible for compassionate release due to his medical condition—specifically, Crohn's disease and irritable bowel syndrome. Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

When interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on February 1, 2018, and later revised on March 13, 2018, Jackson reported that he had suffered from Crohn's disease since 2001. Jackson was not taking any medication at the time and reported no other serious or chronic illnesses. Jackson's 2021 BOP medical records reveal that he is currently diagnosed with mild alcohol use disorder, severe opioid use disorder, severe cannabis use disorder, Crohn's disease, and noninfective gastroenteritis and colitis. The records further indicate that Jackson's last flare of Crohn's disease was in 2005 and that he has been off medication for 10 years. In medical records obtained from Buffalo General Hospital, after Jackson was initially diagnosed with Crohn's disease in 1981, his treating physician noted that his compliance with prescribed medications was poor to questionable. In a letter to the court, dated

December 3, 2020, Jackson concedes that his Crohn's disease is in remission. On June 9, 2020, a Clinical Encounter report indicated that a

> 39 year old black male [is] here with complaint of abdominal pain and vomiting. States he has Crohn's disease but does not take daily medication and has not had a flare in many years. States he controls his illness with diet but right now his diet is off because of working in the kitchen. He has had diarrhea for three days and vomited yesterday morning and this morning.

During this encounter, the nurse practitioner prescribed bismuth subsal suspension (Pepto-Bismol) and rest to manage Jackson's symptoms.

In his letter, Jackson emphasizes that he is in "fear" of contracting COVID-19, which he described as being at all-time high, stating, "I want to live and I want to be healthy," that it "scares" him, and that he is "trying not to stress too much." He added, "the stress and worry that I have can be unexplainable at times." Yet, inexplicably, Jackson's BOP medical records show that he refused the Pfizer-BioNTech vaccine on January 15, 2021. He subsequently tested negative for COVID-19 on February 19, 2021. Probation's investigation revealed that Jackson is classified as a BOP medical Care Level 1 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy. The may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."

The court acknowledges that Jackson's substance use disorders, according to the Centers for Disease Control and Prevention ("CDC") website, can make him more likely to become

severely ill should he contract COVID-19.[4] According to the Substance Abuse and Mental Health Services Administration, approximately 20.3 million Americans, aged 12 and older, battled a substance use disorder in 2018. Hence, having such a commonplace affliction does not make Jackson's case "extraordinary." *See Thompson*, 984 F.3d at 434. With regard to Jackson's Crohn's disease, "the CDC does not even recognize, more generally, gastrointestinal issues as placing individuals at higher risk of severe illness from COVID-19." *United States v. Rogers*, No. 1:16-CR-00072-NONE, 2020 WL 5440352, at *5 (E.D. Cal. Sept. 10, 2020); *see United States v. Love*, No. 3:14-CR-0300-B-3, 2021 WL 779074, at *3 (N.D. Tex. Mar. 1, 2021) (The court denied compassionate release on the basis of Crohn's disease because the defendant did "not allege that his Crohn's disease is uncontrolled or that he is not receiving proper care to manage it" at the facility where he is housed.). Indeed, none of Jackson's current medical conditions are serious, terminal, or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Jackson's medical conditions are in remission or otherwise well-controlled with medication and diet. *See id.* In fact, Jackson's BOP records reveal that he is housed in general population, has no medical restrictions, has regular duty work assignments, and is cleared for food service.

Furthermore, Jackson has a history of substance abuse starting at age 14, including the regular use of alcohol and the daily use of opiates and marijuana. Thus, releasing Jackson early may facilitate his drug abuse disorders, as he would gain unfettered access to alcohol and illicit

---

[4] In relevant part, the CDC states that adults with substance use disorder (such as alcohol, opioid, or cocaine use disorder) can be more likely to become severely ill from COVID-19.

drugs outside the BOP. Clearly, his Crohn's disease did not hamper or prevent him from committing a series of crimes, including his offense of conviction, or from abusing a variety of drugs. Therefore, Jackson has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

    C.    <u>Other Reasons</u>

Jackson further requests compassionate release due to his post-conviction rehabilitation and the threat of COVID-19 in the prison setting. It is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct and has a criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94; *accord* Keys, 2021 WL 1732282, at *1 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal."). In exercising its discretion, the court finds that no extraordinary and compelling reasons exist in relation to Jackson's situation.

Nonetheless, Jackson maintains that his post-sentence rehabilitation, evidenced by a list of courses and programs he has completed, establishes extraordinary and compelling reasons for compassionate release. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and]

10

'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

In addition, Jackson maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Nevertheless, as of May 11, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,914) and 4 staff members at Atlanta USP as having confirmed positive cases of COVID-19, 194 inmates and 25 staff members who have recovered, and 2 inmates who succumbed to the disease. Thus, it appears that the facility where Jackson is housed is handling the outbreak appropriately and providing adequate medical care.

Although Jackson expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Jackson, were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 167,667 doses of the vaccine. Indeed, according to www.bop.gov, Atlanta USP, where Jackson is housed, has fully inoculated

689 inmates and 217 staff members. Jackson's BOP medical records, however, reflect that he refused the Pfizer-BioNTech vaccine on January 15, 2021. Notably, courts have denied compassionate release where, as here, the inmate has refused the COVID-19 vaccine. *See United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination[, Defendant] declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction." (quoting *United States v. Lohmeier*, No. 12-CR-1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021))); *United States v. McBride*, No. 519CR00007KDBDCK1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) ("Defendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison."). Similarly, Jackson cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated. Therefore, in view of his refusal to receive the COVID-19 vaccine, his lack of a terminal or debilitating medical condition, the fact that his Crohn's disease has been in remission for over 15 years, and his ability to provide self-care while incarcerated, Jackson has failed to establish that extraordinary and compelling reasons exist to release him from prison.

        D.      <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Keys*, 2021 WL 1732282, at *1; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*,

948 F.3d at 693-94. Jackson's offense of conviction entails his participation in a drug-trafficking conspiracy involving the distribution of between 15 and 50 kilograms of cocaine. Jackson conspired with a codefendant in Buffalo, New York, to use Jackson's contacts with drug suppliers in Houston, Texas, to obtain multi-kilogram quantities of cocaine in Houston. Jackson transported the cocaine to Buffalo and returned the bulk cash proceeds to Houston. Jackson's fingerprints were identified on a suspicious package containing 3.75 kilograms of cocaine that was seized by authorities in April 2015 and destined for distribution in Buffalo. During a traffic stop in New York in February 2016, Jackson possessed $4,500 in United States currency and a postal receipt for a newly mailed package. Officers seized the parcel which revealed the presence of $28,500 in bulk cash proceeds destined for Houston, representing a partial payment for cocaine supplied by the conspiracy. Jackson was associated with the seizure of bulk cash proceeds of $81,620 and $84,609 from the luggage of couriers hired by the conspiracy who were exiting a bus in Houston in March 2016. He also accompanied coconspirators in transporting 6.02 kilograms of cocaine from Houston to Buffalo on behalf of the conspiracy who were stopped by authorities in Jefferson County, Texas, in June 2016. Jackson drove a "chase" vehicle immediately ahead of the load vehicle which he had registered and provided to the couriers. Jackson admitted that he served in a managerial/supervisory role in the drug-trafficking organization which involved five or more participants and was extensive.

Jackson also has a substantial criminal history, which includes prior convictions for criminal possession of a controlled substance (cocaine), criminal possession of marijuana, lesser included offense of drugs not in original container, and obstruction or hindering law enforcement (2). Jackson was on probation at the time of the instant offense and has a history of poly-substance

abuse. In view of the nature and circumstances of his offense of conviction, his criminal history, and his history of substance abuse, the court cannot conclude that Jackson's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Jackson compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a significant portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id*. at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Jackson after he has served only 46 months (or approximately 45%) of his 101-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Jackson's track record is similarly a poor one. In this situation, there is no reason to believe that Jackson would not revert to his prior drug-dealing and drug-abusing behavior, as well as his other criminal activities, if released from prison at this time.

III. Conclusion

In sum, Jackson has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Jackson's *pro se* Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (#292) is DENIED.

SIGNED at Beaumont, Texas, this 12th day of May, 2021.

_Marcia A. Crone_
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE