**UNITED STATES DISTRICT COURT**     **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:17-CR-70(1) |
| | § | |
| ANTHONY JACKSON, JR. | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Anthony Jackson, Jr.'s ("Jackson") *pro se* Motion for Early Termination of Supervised Release (#313) wherein he seeks early termination of his five-year term of supervised release.  Jackson began serving his term of supervised release in the Northern District of Georgia on August 4, 2023, and it is scheduled to expire on August 3, 2028. Jackson's United States Probation and Pretrial Services ("Probation") Officer in the Northern District of Georgia is not opposed to Jackson's request for early termination.  His probation officer in the Eastern District of Texas, however, reviewed the file and is opposed to Jackson's request for early termination of his term of supervised release and recommends that his supervision be continued as ordered.  The United States Attorney's Office in the Eastern District of Texas is also opposed to the early termination of Jackson's supervised release.  Having considered the motion, the positions of Jackson's Probation Officers, the Government's objection, the record, and the applicable law, the court is of the opinion that Jackson's motion should be denied.

I.     Background

On May 3, 2017, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned an Indictment charging Jackson with conspiracy to possess with intent to distribute 5 kilograms or more of a controlled substance (cocaine HCl).  He pleaded guilty to this offense on September 27, 2017, pursuant to a written plea agreement.

On March 28, 2018, the undersigned judge sentenced Jackson to 151 months' imprisonment to be followed by 5 years of supervised release for this drug-trafficking offense. On August 7, 2020, Jackson's sentence was reduced to 101 months' imprisonment to be followed by 5 years of supervised release. On August 4, 2023, Jackson was released from prison and began supervision in the Northern District of Georgia, Atlanta Division. Jackson's term of supervised release is scheduled to expire on August 3, 2028.

In his motion seeking early termination, Jackson, age 45, asserts that he is nearing year 3 of his 5-year term of supervised release and that he has complied with all conditions imposed by the court for the entirety of his sentence and is eager to fully reintegrate himself as a productive member of society. He states that he has maintained steady employment where he has made many achievements, being recognized for great workmanship, performance, and leadership skills. He elaborates that he has received bonuses and plenty of recognition to remind him that he has continued to stay on track, while also drafting up his own business ideas for his family and future. Jackson claims that he has remained focused on his rehabilitation using his spare time to build on his accomplishments and consider what his sons' futures will look like and what directions they would like to go, noting that his goal as a father is to be able to assist them in getting there. He maintains that he is no threat to society and his focus is on continuing to build his life so he can continue being a great dad, son, and soon husband. Jackson further contends:

> At times this can be difficult because of my restrictions, missing out on intimate family moments, my children's birthdays out of town, the ability to see my mother through her most recent health changes, and also at times . . . limits me as a protector. My fiance [sic] owns her own business and travels a lot for work and at times has needed to be accompanied and I wasn't able to. I've also missed a few of my own business opportunities due to my limitations.

My youngest son is graduating from high school late May 2026. I am more than a proud parent and grateful I was able to leave my incarceration and get back into his life at the most important times. We are planning a family trip outside the country for his celebration (after his graduation). I have explained to everyone my free time is nearing but for this reason I find it in my heart to request an early supervised release, because I know it would mean the world to my family but more so to my son for me to be present for out 1st trip together since my incarceration in 2017.

Planning dates & times this year are important to me because I'll also be planning a wedding. I see this time off Supervised Release, if granted as a time to give back to everyone who was there for me and had faith in my future and journey.

In conclusion, continued supervision/restrictions will continue to present practical challenges like (limitations on work/travel opportunities, professional licensing hurdles, and overall difficult planning for everything with a level of importance)[.] Ending my supervision early would enable me to advance in my future planning & ideas and also to support my family better.

II.     Nature and Circumstances of his Offense of Conviction

Jackson's offense of conviction stems from his participation in a drug-trafficking conspiracy involving the distribution of between 15 and 50 kilograms cocaine hydrochloride in the Buffalo, New York, area in the early 2000's. He conspired with a codefendant in Buffalo to use his contacts with drug suppliers in Houston, Texas, to obtain multi-kilogram quantities of cocaine in Houston, transport the cocaine to Buffalo, and return the bulk cash proceeds to Houston. Jackson's fingerprints were identified on a suspicious package that was found to contain 3.75 kilograms of cocaine that was seized by authorities in April 2015 and destined for distribution in Buffalo. On another occasion, he possessed $4,500 in cash and a postal receipt for a newly mailed package during a traffic stop in New York in February 2016. The parcel was seized by law enforcement and was found to contain $28,500 in bulk cash proceeds destined for Houston which represented a partial payment for cocaine supplied to the conspiracy. Jackson was also associated with the seizure of bulk cash proceeds of $81,620 and $84,609 from the luggage of

3

couriers hired by the drug trafficking organization who were exiting a bus in Houston in March 2016.  He accompanied coconspirators transporting 6.02 kilograms of cocaine from Houston to Buffalo on behalf of the conspiracy, and he and the coconspirators were stopped by authorities in Jefferson County, Texas, in June 2016.  He drove a "chase" vehicle immediately ahead of the load vehicle which he had registered and provided to the couriers at the time of his arrest in the Eastern District of Texas.

The court agreed with Probation's determination that Jackson had functioned in a managerial/supervisory role in the cocaine-trafficking conspiracy.  Jackson's criminal history includes prior convictions for criminal possession of a controlled substance and criminal possession of marijuana in Buffalo in 2002 and 2007 as well as convictions for a lesser included offense of drugs not in original container and two counts of obstruction or hindering law enforcement in Douglasville, Georgia, in 2010.  Jackson was serving a term of probation for the latter offenses at the time he committed his offense of conviction.  Jackson had a long history of substance abuse at the time of his conviction in the instant case which included the daily use of marijuana and Lortabs as well as the frequent use of alcohol.

III.    Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct

---

[1] These factors include:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing

of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). In addition, the United States Sentencing Guidelines list supplemental factors that the court may wish to consider when determining whether to terminate the remaining term of supervised release.[2] "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249,

---

Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a), 3583(e).

[2] Specifically, the Guidelines list: (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant. U.S.S.G. § 5D1.4, Application Note B.

at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes." 309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

Although Jackson's Probation Officer in the Northern District of Georgia does not oppose early termination, this fact, standing alone, is insufficient to justify granting Jackson's request for early termination. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and Probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228-B(01), 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3;

*see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Bondy*, No. 19-232, 2026 WL 1282742, at *2 (E.D. La. May 11, 2026) ("full compliance . . . is merely what is expected of all people serving terms of supervised release." (quoting *Karacsonyi v. United States*, No. 97-1220, 1998 WL 401273, at *1 (2d Cir. June 10, 1998))); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the

defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can

justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision).   Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United States v. Baptiste*, No. 98-207, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that early termination is generally warranted "only in cases where the defendant shows changed circumstances, such as exceptionally good behavior" (quoting *United States v. Jones*, No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013))); *Smith*, 2014 WL 68796, at *1.

In this situation, the court finds that Jackson's post-release conduct does not warrant early termination of his supervised release.  Although he appears to have generally complied with his conditions of release to date, he identifies no new or exceptional circumstances or needs that would merit early release from supervision.  Jackson's motion for early termination of supervised release is full of platitudes, aspirational statements, and an expressed desire to spend more time with family members, but it is otherwise vague, nebulous, and generally self-serving with few facts or explanations.  Jackson provides no information to the court regarding his place of residence, with whom he resides or for whom he provides, where his parents[3] and children reside, the nature of his mother's health changes, where he works, the type of work he performs, his

---

[3] His father, Anthony Jackson, Sr., was a codefendant in the underlying cocaine-trafficking case. He was a drug user and addict and arranged for another codefendant to introduce his son, the defendant, to a drug source of supply in Houston, Texas.  As a result of this meeting, Jackson grew to have contacts in the Houston drug distribution community that permitted him to facilitate drug distribution in Buffalo and elsewhere.

alleged missed business opportunities, the specific professional licensing hurdles he claims to face, the nature of his fiancée's business, why she needs to be accompanied on business trips, or the nature of any community, religious, or recreational pursuits in which he participates.

Jackson likewise is not forthcoming about details regarding his alleged planned family trip outside the United States to celebrate his son's graduation from high school.  Unlike international trips, travel within the United States is generally subject to the discretion of a supervisee's probation officer and travel to other states is usually authorized for family visits, employment purposes, health needs, and special occasions.  Hence, a variety of domestic destinations would appear to be available to Jackson and his family to celebrate his son's graduation from high school. This country offers ample choices for attractive vacation destinations—mountains, seashores, cities, historic sites, rural retreats, and picturesque resorts—without the need of a passport and visa or the difficulties of international travel, much less the cost.  Hence, Jackson and his family should be able to agree on location to celebrate his son's graduation from high school while still complying with the conditions of his term of supervised release.  An international trip is certainly not a necessity for a recent high school graduate and not usually an expectation.  Available funds are often directed to college or vocational training costs for the new graduate in order to further his future career.  In the meantime, Jackson can concentrate on planning his wedding and making arrangements to visit his mother and his sons where they reside or for them to travel to Atlanta to visit him and his fiancée.  In any event, Jackson and his family need only wait a little more than two years for his term of supervision to expire to make more elaborate plans and embark on international travel.

In the interim, the court finds the current conditions of his term of supervised release are not onerous and remain appropriate in view of Jackson's offense of conviction, his criminal record, and his history of substance abuse.  Requiring Jackson to complete his entire five-year term of supervised release safeguards against the reoccurrence of criminal activity, while imposing only a minimal burden on Jackson. Generally, early termination of supervised release is not granted unless there are significant medical concerns that are not being addressed, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release.  Jackson does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions of release imposed by the court at sentencing.  Thus, although Jackson appears to be on the right path, the court believes that the completion of his full term of supervised release appropriately reflects the seriousness of his offense of conviction, deters future criminal conduct, safeguards against the resumption of prior substance abuse, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4.  "Supervised release is meant as a safety net to support reentry into the community." *Bondy*, 2026 WL 1282742, at *3.  In this instance, there is no reason to terminate this safety net prematurely as to Jackson.  "Allowing U.S. Probation to continue to monitor and guide [Jackson] is advantageous as it is able to offer resources, guidance and accountability to [Jackson] to ensure he successfully continues his rehabilitation journey." *United States v. Clausell*, No. 1:20cr0091-LG-RPM-1, 2026 WL 1008154, at *2 (S.D. Miss. April 14, 2026).

As Probation points out:

According to the presentence report, beginning in the early 2000s, Mr. Jackson became involved in the distribution of cocaine in the Buffalo, New York area.

Specifically, he began to facilitate the distribution of cocaine, along with others, between Houston, Texas; Atlanta, Georgia; and Buffalo, New York. Mr. Jackson was integral to the operation of the drug trafficking organization and is responsible for distributing more than 15 but less than 50 kilograms of cocaine.

Though Mr. Jackson is to be commended for his compliance thus far, after submitting a urinalysis positive for marijuana in October of 2024, he does not provide any extraordinary and compelling reason for early termination, outside of general compliance that is expected. Given the circumstances and Mr. Jackson's role in the drug trafficking organization, the U.S. Probation Office in the Eastern District of Texas concurs with the Government's recommendation in this case. As such, it is respectfully suggested the Court deny this motion and allow Mr. Jackson to continue supervised release, as previously ordered.

The court concurs with the assessment of the situation by the Probation Office for the Eastern District of Texas and finds that the early termination of Jackson's five-year term of supervised release would not be in the interest of justice.

IV.    Conclusion

In accordance with the foregoing, Jackson's *pro se* Motion for Early Termination of Supervised Release (#313) is DENIED.

 SIGNED at Beaumont, Texas, this 22nd day of June, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE